UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------

STEPHEN BUSHANSKY,

            Plaintiff,

      v.

PRIVETERRA ACQUISITION CORP.,
ROBERT PALMISANO, VIKRAM MALIK,
OLEG GRODNENSKY, LANCE A. BERRY,
JAMES LIGHTMAN, and JULIE B.
ANDREWS,

            Defendants.

------------------------------------------------------

Case No. _____

**COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

      Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

      1.    This action is brought by Plaintiff against Priveterra Acquisition Corp. ("Priveterra" or the "Company") and the members of Priveterra's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Priveterra will be combined with AEON Biopharma, Inc. ("AEON") (the "Proposed Transaction").

2.      On December 13, 2022, Priveterra issued a press release announcing entry into a Business Combination Agreement, dated as of December 12, 2022, to combine Priveterra and AEON (the "Merger Agreement").

3.      Priveterra will acquire 100% of AEON in exchange for the issuance of 16.5 million shares of common stock of Priveterra (valued at $10 per share) to the existing shareholders and convertible noteholders of AEON at close (before milestone-based earnouts). Priveterra's sponsor has also allocated 50% of its common stock to an earnout based on achievement of certain clinical milestones.

4.      On December 27, 2022, Priveterra filed a Registration Statement on Form S-4 (the "Registration Statement") with the SEC.  The Registration Statement, which recommends that PTIC II stockholders vote in favor of the Proposed Transaction, omits, or misrepresents material information concerning, among other things: (i) the Board's analysis of the Proposed Transaction; (ii) the Company's financial advisors' potential conflicts of interest; and (iii) the potential conflicts of interest of Company insiders.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Priveterra stockholders need such information to make a fully informed decision whether to vote in favor of the Proposed Transaction or seek redemption for their shares.

5.      In short, unless remedied, PTIC II's public stockholders will be forced to make a voting or redemption decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.     This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District or is an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Moreover, Priveterra's common stock trades on the Nasdaq Capital Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

9.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Priveterra.

10.     Defendant Priveterra is a Delaware corporation, with its principal executive offices located at 300 SE 2nd Street, Suite 600, Fort Lauderdale, Florida 33301.  Priveterra is a blank-check company formed for the purpose of effecting a merger, share exchange, asset acquisition, share purchase, reorganization, or similar business combination with one or more businesses in life sciences.  Priveterra is sponsored by Robert Palmisano and Priveterra Capital, LLC.  Priveterra's shares trade on the Nasdaq Capital Market under the ticker symbol "PMGM."

11.     Defendant Robert Palmisano ("Palmisano") has been Chairman of the Board and Chief Executive Officer ("CEO") of the Company since December 2020, and a director of the Company at all relevant times.

12.     Defendant Vikram Malik ("Malik") has been President and a director of the Company since December 2020.

13.     Defendant Oleg Grodnensky ("Grodnensky") has been Chief Operating Officer and Chief Financial Officer of the Company since December 2020 and a director of the Company at all relevant times.

14.     Defendant Lance A. Berry ("Berry") has been a director of the Company at all relevant times.

15.     Defendant James A. Lightman ("Lightman") has been a director of the Company at all relevant times.

16.     Defendant Julie B. Andrews ("Andrews") has been a director of the Company at all relevant times.

17.     Defendants identified in paragraphs 11-16 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

18.     AEON is a clinical stage biopharmaceutical company focused on developing ABP-450 (prabotulinumtoxinA) injection for the treatment of debilitating medical conditions with an initial focus on the neurology and gastroenterology markets.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

19.     Priveterra is a blank check company organized for the purpose of effecting a

merger, share exchange, asset acquisition, share purchase, reorganization, or similar business combination with one or more businesses in life sciences.

**The Proposed Transaction**

20.    On December 13, 2022, Priveterra issued a press release announcing the Proposed Transaction, which states, in relevant part:

> Irvine, Calif., December 13, 2022 – AEON Biopharma, Inc. ("AEON" or the "Company"), a private clinical-stage biopharmaceutical company focused on the development of its proprietary botulinum toxin complex ABP-450 (prabotulinumtoxinA) injection for therapeutic indications, and Priveterra Acquisition Corp. (Nasdaq: PMGM) ("Priveterra"), a special purpose acquisition company (SPAC), announced that they have entered into a definitive business combination agreement. Upon closing of the proposed transaction, the combined company will operate as AEON Biopharma, Inc. and is expected to list on Nasdaq under the ticker symbol "AEON".
>
> **AEON Uniquely Positioned to Capitalize on Global Therapeutic Neurotoxin Opportunity**
>
> Since its founding in 2019, AEON Biopharma has been led by Marc Forth, an Allergan plc veteran of 16 years and a former head of the BOTOX® Therapeutic franchise in the United States. AEON has assembled a seasoned team with expertise in neuroscience research, development, regulatory affairs, operations, manufacturing, and commercialization. Its executive team is comprised of industry leaders who have led new drug FDA approvals including multiple indications across multiple neurotoxin products.
>
> The global therapeutic neurotoxin market is currently estimated to be $3.0 billion, of which the U.S. represents approximately 84%, and projected to grow to approximately $4.4 billion in 2027. BOTOX®, marketed by Abbvie, Inc., currently holds approximately 95% U.S. market share for therapeutic indications in the neurotoxin space.1 Other neurotoxin competitors have had success with aesthetic indications in the cash-pay consumer-driven market but have been unable to acquire meaningful market share for therapeutic indications due to the indirect influence of pricing dynamics for aesthetic indications that results in a minimal value proposition for both payors and providers. AEON intends to file a unique BLA for therapeutic indications that would be free of any effects on reimbursement that exist for all other toxin competitors that have both therapeutic and aesthetic indications approved under a single BLA.
>
> Lead product candidate, ABP-450, is the same botulinum toxin approved and marketed for an aesthetic indication. Its 900 kDa molecular weight, similar to the

market leader, will enable providers with a seamless transition to ABP-450 for therapeutic uses. Similar to the approved neurotoxins currently in the market, ABP-450's commercial success does not depend upon patent protection, creating the possibility for an annuity-like construct of continued revenue generation, should ABP-450 be FDA approved.

AEON's therapeutic-only focus also provides a differentiated business model designed to deliver enhanced value to payors and providers by permitting a traditional pharma pricing model that is not currently available to competitors that also market their products for aesthetic uses approved under a single BLA. The sole focus on therapeutics allows AEON to pursue an original BLA filing that would allow a unique commercial strategy that cannot be employed by other competitors.

**Management Quotes**

Marc Forth, CEO and President of AEON Biopharma, said: "We're making great progress across our late-stage clinical programs as we continue the development of ABP-450 for the treatment of multiple debilitating medical conditions. Today's entry into the business combination agreement is the next step towards accelerating our development plans as we progress towards Phase 3 studies and regulatory approvals in our targeted markets. I am also fortunate to welcome Bob Palmisano to AEON and believe he will add significant value as our Chairman of the Board. His experience as a public company CEO and extensive history in executive, operational, financial, and strategic roles across the life science industry in commercial and pre-commercial businesses will be invaluable as we advance towards a potential commercial launch of ABP-450."

Bob Palmisano, Chairman and CEO of Priveterra Acquisition Corp. said: "We believe AEON brings a disruptive business model with its exclusive therapeutic focus into a market dominated by one player with 95% of the U.S. market. In addition to near-term clinical milestones in multiple indications and de-risked developmental pathways with well-established FDA regulatory endpoints, today's proposed merger will allow AEON to access capital markets and execute on its development strategy and bring ABP-450 closer to commercialization." Bob continued, "Marc has made a great deal of progress since AEON was started in 2019 and assembled a highly experienced team in the neurotoxin space that has recently produced positive Phase 2 results in cervical dystonia, while also having raised $112 million. AEON is ready to be a public company and we are excited about the considerable value that it will bring to all stakeholders - patients, providers, payers and investors."

**Summary of the Transaction**

Priveterra will acquire 100% of AEON in exchange for the issuance of 16.5 million of shares of common stock of Priveterra (valued at $10 per share) to the existing shareholders and convertible noteholders of AEON at close (before milestone-

based earnouts). Priveterra's sponsor has also allocated 50% of its common stock to an earnout based on achievement of certain clinical milestones.

The Boards of Directors of both AEON and Priveterra have unanimously approved the proposed merger, which is expected to close in the first half of 2023, subject to the approval by Priveterra's shareholders and the satisfaction or waiver of certain other customary closing conditions.

Additional information about the transaction will be provided in a Current Report on Form 8-K to be filed by Priveterra and AEON with the Securities and Exchange Commission ("SEC") and will be available at the SEC's website, www.sec.gov.

**Advisors**

Latham & Watkins LLP served as legal advisors to AEON. Cohen & Company Capital Markets, a division of J.V.B. Financial Group, LLC served as financial advisor to Priveterra. Canaccord Genuity LLC, served as lead capital markets advisor to Priveterra and H.C. WAINWRIGHT & CO., LLC also acted as a co-capital markets advisor to Priveterra. Davis Polk & Wardwell LLP served as legal advisors to Priveterra.

## The Registration Statement Contains Material Misstatements or Omissions

21.     The defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to Priveterra's stockholders.  The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek to exercise their redemption rights.

22.     Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Board's analysis of the Proposed Transaction; (ii) the Company's financial advisors' potential conflicts of interest; and (iii) the potential conflicts of interest of Company insiders.

### *Material Omissions Concerning the Board's Analysis of the Proposed Transaction*

23.     In connection with the Board's review of the financial aspects of the Proposed Transaction, Canaccord reviewed with the Board a comparable companies analysis prepared by Priveterra's management team and focused on certain companies that may be deemed comparable to AEON, See Registration Statement at 71, 90, 91, 95, 96.  The Registration Statement fails, however, to disclose the financial metrics and multiples for each of the comparable companies reviewed by the Board.

24.     The omission of this information renders the statements in "The Background of the Business Combination" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

25.     The Registration Statement fails to disclose material information concerning the potential conflicts of interest faced by Company insiders.

26.     For example, the Registration Statement sets forth that "[e]ach of our independent directors is a party to an independent director transaction bonus agreement, which provide for payments to such independent directors that are contingent on Priveterra's consummation of an initial business combination and which may be affected by the Business Combination." Registration Statement at 93.  The Registration Statement fails, however, to disclose and quantify the payments expected to be received by the Company's independent directors if the Proposed transaction is consummated.

27.     The omission of this information renders the statements in the "Independent Director Oversight" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Company's Financial Advisors' Potential Conflicts of Interest***

28.     The Registration Statement fails to disclose material information concerning the potential conflicts of interest faced by the Company's financial advisors.

29.     For example, the Registration Statement fails to disclose the fees that Cohen & Company Capital Markets division ("Cohen"), Canaccord Genuity LLC ("Canaccord") and H.C. Wainwright & Co., LLC ("H.C. Wainwright") expect to receive from the Company in connection with their engagements.

30.     Additionally, the Registration Statement fails to disclose whether Cohen, Canaccord and H.C. Wainwright have provided any past services to AEON and, if so, the fees received for these services.

31.     The omission of this information renders the statements in the "Background of the Business Combination" and "Certain Engagements in Connection with the Business Combination" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act

32.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff, and the other stockholders of Priveterra will be unable to make a sufficiently informed voting or redemption decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

### CLAIMS FOR RELIEF

### <u>COUNT I</u>

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

33.     Plaintiff repeats all previous allegations as if set forth in full.

34.     During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary to make the statements, considering the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

35.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement.  The Registration Statement was prepared, reviewed, and/or disseminated by the defendants.   It misrepresents and/or omits material facts, including material information about (i) the Board's analysis of the Proposed Transaction; (ii) the Company's financial advisors' potential conflicts of interest; and (iii) the potential conflicts of interest of Company insiders.  The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

36.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

37.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

38.     Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

### <u>COUNT II</u>

**Claims Against the Individual Defendants for Violations
of Section 20(a) of the Exchange Act**

39.     Plaintiff repeats all previous allegations as if set forth in full.

40.     The Individual Defendants acted as controlling persons of Priveterra within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Priveterra, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

41.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

42.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Registration Statement.

43.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

44.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

45.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a direct and proximate result of defendants' conduct, Priveterra stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Priveterra, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Priveterra stockholders;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated:  January 5, 2023                    **WEISS LAW**

                                    By _____
                                        Michael Rogovin
                                        476 Hardendorf Ave.
                                        Atlanta, GA 30307
                                        Tel: (404) 692-7910
                                        Fax: (212) 682-3010
                                        Email: mrogovin@weisslawllp.com

                                        *Attorneys for Plaintiff*